**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

CHRISTOPHER J. MOORE,

     Petitioner,

v.                                          Case No. 8:03-CV-1205-T-27MAP

JAMES McDONOUGH,[1]

     Respondent.

_____/

**O R D E R**

Petitioner, a State of Florida inmate, initiated this action *pro se* by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1). Petitioner is challenging his 1998 conviction for first degree murder entered by the Tenth Judicial Circuit Court, Polk County, Florida. Respondent filed a response to the petition (Dkt. 12), and Petitioner has filed a reply thereto (Dkt. 17). The matter is now before the Court for consideration of the merits of the petition.

**Background**

On July 5, 1997, Petitioner returned from work to discover that his wife, Sharon Moore, was not at home and her clothing and the household goods and furnishing were gone. During the following week, his attempts to learn of his wife's whereabouts were unsuccessful. At approximately 4:30 p.m. on July 13, 1997, Petitioner was driving the streets of Lakeland, Florida, looking for his wife when he saw her driving toward the church she regularly

---

[1] James McDonough, the current Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for James V. Crosby, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

attended. Accelerating to a high rate of speed, Petitioner gave chase. He was able to block her escape and ram her car as she approached the church. The confrontation that followed culminated at 4:45 p.m. with two shoots fired by Petitioner into his wife's car.

On July 24, 1997, Petitioner was charged by Indictment with the shooting death of Sharon Moore (Dkt. 9, Ex. 13, Vol. I at R. 1). Represented by retained counsel, *id.* at R. 6-7, Petitioner proceeded to a trial by jury on June 1, 1998. The jury returned a verdict of guilty as charged. Petitioner was adjudicated guilty on July 30, 1998 and sentenced him to a term of natural life in prison. *Id.* at R. 32, 50.

Represented by court-appointed counsel on direct appeal, Petitioner argued that (1) it was reversible error to admit – or refuse mistrial due to – unduly prejudicial, state of mind, or collateral evidence, often hearsay in nature; and (2) reversible error occurred with regard to prior "consistent" statements by the State's star witness Tracy Moore (Dkt. 9, Ex. 1). The appellate court affirmed Petitioner's conviction without written opinion on November 17, 1999 (Dkt. 9, Ex. 4). *See Moore v. State*, 747 So.2d 940 (Fla. 2d DCA 1999) (table decision). The mandate issued on December 9, 1999 (Dkt. 9, Ex. 5).

On February 16, 2000, Petitioner filed a state application for post-conviction relief pursuant to Fla. R. Crim. P. 3.850 raising the following claims: (1) trial counsel was ineffective in (a) waiving a plausible defense of voluntary intoxication; (b) misrepresenting to the court words uttered by Michael World as he left the witness stand; (c) failing to protect Petitioner's Fifth Amendment right; and (d) failing to enter contemporaneous objections to testimony restricted by the motion in limine; and (2) Petitioner was incompetent at the time of the alleged offense and during trial (Dkt. 9, Ex. 6, Vol I at PCR 51-107). On December 7, 2001, the trial court denied Petitioner's Rule 3.850 motion. *Id.* at PCR 187-89. On appeal, Petitioner argued that trial counsel's lack of direct contact or communication with Petitioner prior to trial

and failure to allow Petitioner to participate in decisions concerning the defense strategy violated his right to effective assistance of counsel (Dkt. 9, Ex. 7). The appellate court affirmed the trial court's decision per curiam, without written opinion, on February 7, 2003 (Dkt. 9, Ex. 9). *See Moore v. State*, 845 So.2d 198 (Fla. 2d DCA 2003). The mandate issued on April 10, 2003 (Dkt. 9, Ex. 12).

Petitioner filed his request for federal habeas relief on June 10, 2003, asserting four grounds for relief:

1. Trial counsel arbitrarily disregarded the affirmative defense of voluntary intoxication and chose to present the untenable defense of misidentification;

2. Trial counsel refused to interview a potential witness who had first hand knowledge of Petitioner's state of intoxication on the date of the offense;

3. During trial counsel's year long representation of Petitioner in his capital murder case, [he] never once met with, interviewed, or in any way discussed this Petitioner's case with him; trial counsel relied entirely on two interviews conducted by a secretary in order to make all his decisions regarding Petitioner's case, including two competing avenues of defense he would present to the jury; trial counsel completely denied the Petitioner the right to be involved in any trial preparation or strategy elections; and

4. Petitioner was denied his due process rights thru the admittance of highly prejudicial photographs, character testimony which had previously been ruled inadmissible by the trial judge and hearsay references to Petitioner's character. Petitioner was denied his right to a fundamentally fair trial.

Dkt. 1. Respondent acknowledges that the petition is timely but argues that it should be denied because Petitioner has failed to make the showing necessary for relief under 28 U.S.C. §§ 2254(d)-(e) (Dkt. 12 at 1).  Having reviewed the record, the parties' arguments, applicable statutes, and controlling case law,  the Court agrees.

### Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), signed into law on April 24, 1996, amended the statutes governing federal habeas relief for state prisoners.

Since Petitioner's conviction was entered after AEDPA was enacted, his petition is subject to the provisions thereof. Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims. *See Mobley v. Head*, 267 F.3d 1312, 1316 (11ᵗʰ Cir. 2001).

Under 28 U.S.C. § 2254(d) and (e), this Court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001). Similarly, the state court's resolutions of issues of law – including constitutional issues – must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involve an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). It is not enough "that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id. See also Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

Moreover, in order for a court to consider claims brought in a federal habeas petition they must first be fully exhausted in state court. 28 U.S.C. § 2254(b)(1); *Kelley v. Sec'y for Dep't Of Corrs.*, 377 F.3d 1317, 1343 (11th Cir. 2004). In order to be exhausted, a federal claim must be fairly presented to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971). A federal question raised in a federal habeas petition is not fairly presented to the state courts if the issue is only raised as a state law claim before the state courts. *Anderson v. Harless*, 459 U.S. 4, 6-8 (1982). Thus, federal claims that have not been fairly presented – that is, where the petitioner presents his claims to the state court "such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation

4

– are procedurally barred and cannot be adjudicated at the habeas stage." *Kelley*, 377 F.3d at 1344-45 (citing *Picard*, 404 U.S. at 277).

## Evidentiary Hearing

The Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing. *See Smith v. Singletary*, 170 F3.d 1051, 1053-54 (11th Cir. 1999). The pertinent facts of the case are fully developed in the record before the Court. *See Cave v. Singletary*, 971 F.2d 1513, 1516 (11th Cir. 1992). Thus, no additional evidentiary proceedings are required. *See High v. Head*, 209 F.3d 1257, 1263 (11th Cir. 2000), *cert. denied*, 532 U.S. 909 (2001) (citing *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)).

## Discussion

As set forth above, Petitioner's first three claims are premised on the right to effective assistance of counsel. To establish a prima facie claim of ineffective assistance of counsel at trial, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

"[T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)). Because the ultimate resolution of ineffective assistance of counsel claims is a mixed question of law and fact, *see Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001); *Meeks v. Moore*, 216 F.3d 951, 959 (11th Cir.

2000), the presumption of correctness contained in § 2254(e)(1) does not apply to this determination. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001). State court findings of historical facts made in the course of evaluating an ineffectiveness claim are, however, subject to a presumption of correctness under 28 U.S.C. § 2254(e) unless the petitioner demonstrates by clear and convincing evidence that they are incorrect, see *Williams v. Taylor*, 529 U.S. at 412-413, a burden that Petitioner has failed to carry. *See* § 2254(e)(1).

As the record reflects, the state trial court applied *Strickland*'s two-prong test in its assessment of the claims raised in Petitioner's Rule 3.850 motion (Dkt. 9, Ex. 6, Vol. II at 187, 348). Because the state court applied the correct standard of review, to be entitled to relief under § 2254, Petitioner must establish that the state court's application of the *Strickland* standard in reaching the determination that the claims raised in his Rule 3.850 motion lacked merit was objectively unreasonable or that the decision "was based on an unreasonable determination of the facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d).

**Grounds One, Two and Three**

The crux of these three claims is Petitioner's belief that had trial counsel presented a voluntary intoxication defense rather than maintaining that Petitioner was actually innocent of the charge, the jury would have been convinced that he could not have formed the specific intent necessary for a first degree murder conviction and found him guilty of second degree murder instead. Because each of these claims is premised on Petitioner's argument that under the facts of the case voluntary intoxication was a viable affirmative defense, they will be discussed together.

Acknowledging that Petitioner raised these claims in his Rule 3.850 motion, Respondent contends that Petitioner abandoned Ground One of the petition by failing to raise it in his post-conviction appellate brief. The record reflects that when post-conviction counsel

filed the notice of appeal, he advised the state courts that Petitioner was challenging the trial court's decision denying his Rule 3.850 motion, *see* Dkt. 9, Ex. 6, Vol. II at 339-40. He failed, however, to state with specificity which claims were to be presented on appeal. Generally, if a petitioner abandons a claim on appeal, it is procedurally barred from review in federal and state court. *See Atkins v. Singletary*, 965 F.2d 952, 955 n.1 (11th Cir. 1992); *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) ("In Florida, exhaustion usually requires not only the filing of a Rule 3.850 motion, but an appeal of its denial" (citation omitted));[2] *State v. Mitchell*, 719 So.2d 1245, 1247 (Fla. 1st DCA 1997), *rev. denied*, 729 So.2d 393 (Fla. 1999).

Having closely reviewed the claim Petitioner presents in Ground One and his post-conviction appellate brief, the Court disagrees with Respondent's constrained reading of the issues raised therein. As the appellate brief demonstrates, post-conviction counsel did not raise Petitioner's competency claim on appeal, but he did argue that trial counsel was ineffective for failing to present a voluntary intoxication defense (Dkt. 9, Ex. 7). The Court will, therefore, address the merits of Ground One.

The finding that Respondent's procedural bar argument fails does not automatically entitle Petitioner to federal habeas relief. To the contrary, this finding merely allows the merits of Petitioner's claim to be addressed. To be eligible for habeas relief, Petitioner must demonstrate that his custody violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

In Ground One, Petitioner alleges trial counsel was ineffective for "arbitrarily" disregarding the affirmative defense of voluntary intoxication, choosing instead to present the

---

[2]Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

7

"untenable defense of misidentification." When Petitioner proceeded to trial, under Florida law, evidence of voluntary intoxication was admissible to prove the defendant lacked the specific intent to commit premeditated murder.[3] *See Dufour v. State*, 905 So.2d 42, 51-52 (Fla. 2005); *Spencer v. State*, 842 So.2d 52, 63 (Fla. 2003); *Chestnut v. State*, 538 So.2d 820, 822 (Fla. 1989). The Florida Supreme Court emphasized, however, that "the defendant must come forward with evidence of intoxication *at the time of the offense* sufficient to establish that he was unable to form the intent necessary to commit the crime charged." *Linehan v. State*, 476 So.2d 1262, 1264 (Fla. 1985) (emphasis added). Here, Petitioner fails to demonstrate that he was actually intoxicated at the time of the offense, much less that he was so intoxicated that he could not form the intent required to commit first degree murder.

When Petitioner was arrested, he was able to relate in detail his activities during the week after his wife left the marital home and events which occurred on the day of the murder up until the time he saw the victim driving toward her church.  Petitioner initially stated that the next thing he remembered was being in a holding cell at the Bartow Police Department. He later recalled having been "walking" when he was suddenly surrounded by Bartow police officers and taken into custody.  Petitioner continued, however, to contend that he had no recollection of getting out of his car at the scene of the shooting, much less the shooting or events that transpired immediately thereafter. Petitioner contends that his dissociative state during the shooting is consistent with the affirmative defense of voluntary intoxication.

Respondent argues that Petitioner's allegations are insufficient to support a claim of ineffective assistance of counsel.  In its order denying Petitioner's Rule 3.850 motion, the trial court found as follows:

---

[3]The voluntary intoxication defense to specific intent crimes was subsequently repealed by the Florida legislature for crimes committed on or after October 1, 1999. Fla. Stat. § 775.051 (1999).

In ground one, claim one, Defendant alleged that counsel was ineffective for asserting an implausible defense (that Defendant's cousin was the party guilty of the crime) and for waiving or failing to raise a plausible defense (voluntary intoxication). To have a facially valid claim for ineffective assistance of counsel, Defendant must meet the two-part *Strickland* test (deficient performance plus prejudice). In that test, Defendant must: "(a) state specific acts(s) or omission(s) which constitute the alleged ineffectiveness, and (b) show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).

Specifically Defendant was convicted of the first degree murder of his wife. Defendant argued in his motion and during his testimony at the evidentiary hearing that trial counsel's theory of defense, *i.e.*, that a cousin of the defendant killed the victim, was ridiculous and that the better defense would have been voluntary intoxication. Defendant in his motion alleged that he had never heard counsel's theory of defense until the opening statement and at the evidentiary hearing also contended he did not know defense counsel intended to use that defense until the morning of trial. Defendant claims that trial counsel's "fabricated" defense was not reasonable when none of the evidence produced at trial "generated one iota of inference that [Defendant's cousin] may have been liable for the death of [Defendant's wife]" and that the assertion of that defense as well as trial counsel's failure to assert the voluntary intoxication defense constituted ineffective assistance of who shot his wife. This determination was Mr. Edmund's assessment of the best trial strategy for the Defendant.

The Court finds from its examination of the record that there is good reason to question Defendant's current assertion that the "Tracy Moore defense" was totally unfounded creation by Mr. Edmund (which Defendant now contends was a totally implausible defense) with no suggestion or concurrence by Defendant. At the sentencing hearing on July 30, 1998, Defendant maintained to the judge that he was innocent and he specifically asserted: "I was innocent from the beginning as I'm innocent now, The real killer's on the street, I'm in here, you know, for no reason at all. But that's what they convicted me of." (R45) The Court also attaches a letter from Defendant to the judge who tried the case and sentenced him that was received in February, 1999, just a little over six months after he was sentenced. In that letter, Defendant writes that "all the evidence pointed to the state's main witness." (Exhibit B). This is the exact witness that, under trial counsel's theory, committed the offense. In essence, Defendant is taking a position now regarding that defense which conflicts with the position he took at sentencing and in the February 1999 letter. Also, throughout the trial testimony there was indication that at the time of the shooting Defendant was wearing clothes different from those being worn by Tracy Moore, but at some point after the shooting Defendant changed into clothes which more nearly fit the description of the clothes Tracy Moore was wearing, *i.e.* red or burgundy pants and a white or light shirt (T370, 386-387, 405-406, 487, 550, 554, 586,

695, 751-752, 900). Although no one could establish when or where Defendant changed clothes after the shooting, the fact that he did at least suggests he may have thought even before his arrest that there was a chance that Tracy Moore would be implicated in the shooting.

At the evidentiary hearing, Jalal Harb, the attorney who prosecuted the case testified briefly regarding his involvement in the case. His testimony regarding the facts known about the case supports Mr. Edmund's recollection of the Defendant's activities on the day of the incident and Mr. Edmund's recollection is supported by the testimony at trial which in turn supports Mr. Edmund's conclusion that the voluntary intoxication defense would not hold up under the facts of this case. (TT-264-274, 287-298, 370, 303-684, 437-438, 464, 495, 548, 553-559, 566, 571-576, 582, 585-586, 590-592, 606, 708, 719, 726, 743).

This Court recognizes that failure to explore the defense of voluntary intoxication is a facially sufficient claim if there is independent evidence of intoxication and the crimes charged are specific intent crimes. *Young v. State*, 661 So. 2d 406 (Fla. 1st DCA 1995). However, it is clear from Mr. Edmund's testimony at the evidentiary hearing as well as from a review of the trial record that his decision not to assert the intoxication defense as well as his attempt to at least raise some reasonable doubt by pointing to evidence that Tracy Moore may have been the one who shot Defendant's wife rather than the Defendant were viable trial strategies based on the facts of this case. Based on the testimony of Mr. Edmund at the evidentiary hearing as well as a review of the trial record, there is no indication that trial counsel failed to consider and explore the voluntary intoxication defense or that he was performing ineffectively in determining to assert the "Tracy Moore defense." Consequently, the first prong of *Strickland* is not met. Moreover, considering that all the witnesses who testified regarding Defendant's demeanor indicated Defendant's behavior was normal that day, there is no reasonable probability that even if Mr. Edmund had raised the voluntary intoxication defense the result in this case would have been different. Accordingly, the second prong of *Strickland* also has not been met.

Dkt. 9, Ex. 6, Vol. II at PCR 187-88. The record supports the trial court's finding that trial counsel considered a voluntary intoxication defense but rejected it for strategic reasons.

During the Rule 3.850 evidentiary hearing, trial counsel testified that he initially thought that voluntary intoxication was a viable defense in Petitioner's case, but as more facts were revealed during discovery, he concluded that the best chance for an acquittal at trial was to assert that Petitioner was innocent of the charged offense. According to trial counsel, he ultimately rejected the voluntary intoxication defense because in his professional opinion as

a practicing criminal defense attorney for more than 40 years, given the facts of the case, he did not believe it would be successful.

As support for his assertion that trial counsel was ineffective for failing to present a voluntary intoxication defense, Petitioner relies, *inter alia*, on the psychological evaluation prepared by Dr. William G. Kremper on October 24, 1997. Dr. Kremper's report does not, however, bolster Petitioner's claim. Having interviewed Petitioner twice, his mother, and the jail nurse, Dr. Kremper determined that Petitioner's capacity to disclose to trial counsel facts pertinent to the criminal charge was "marginal," stating:

> [Petitioner] denied being able to recollect his movements at the time of the offense though was able to provide detailed information about his activities for several days preceding the offense. He reported drinking extensively prior to the offense. If extensive use of alcohol prior to the offense resulted in a blackout, [Petitioner] was not likely to recollect his actions. There was indication from psychological interview and test data that [Petitioner] engaged in extensive denial and rationalization due to characterological defects. He might be unwilling to voluntarily recall his actions surrounding the time of the offense. Possibly, use of alcohol and emotional distress surrounding the time of the offense might have resulted [in the] involuntary repression of actions surrounding the time of the offense.

Dkt. 9, Ex. 6, Vol. II at 196. In assessing his mental state at the time of the offense, Dr. Kremper noted that Petitioner's "actions as reported by his cousin and in the offense report suggested goal directed actions, understanding of his circumstances and awareness of right from wrong." *Id.* at 198. Dr. Kremper concluded that:

> In Mr. Moore's case, his normally functioning psychological defenses were not effective in modulating his anger due to his use of alcohol and debilitated physical and mental condition. Because of his dependent relationship with his wife, her separating from him caused him severe emotional distress. At the time of the offense, his ability to appreciate the criminality of his conduct and control his emotions and behavior were severely compromised.

*Id.* at 199. Notably missing from Dr. Kremper's report is a finding that Petitioner was in such

11

a state of intoxication at the time the offense occurred that he was incapable of forming the requisite intent to commit first degree murder.

Petitioner's alleged "dissociative" state during the murder was only supported by Petitioner's self-report and nothing in the record indicates that it could be confirmed otherwise. Petitioner recalled all of the events of the day up until the point at which he confronted the victim, and he recollected events which occurred after the shooting and reported these events to Dr. Kremper and in interviews with trial counsel's support staff. *See Spencer v. State*, 842 So.2d at 61-62 (expert's opinion that it was *likely* that the defendant suffered a dissociative state during the murder based upon his self-report of not remembering the stabbing and of experiencing a blackout during the attack, his long history of alcohol abuse, and his personality disorder was not admissible to support a voluntary intoxication defense).

Trial counsel testified that he considered Dr. Kremper's report, as well as information provided by Petitioner and lay persons who had contact with Petitioner on July 13, 1997 – both before and after the shooting occurred, and the facts of the case, as well as his own experience in presenting voluntary intoxication defenses, before deciding that the best strategy in Petitioner's case was to assert that the witnesses identified the wrong man as the shooter. Under Florida law, trial counsel's strategic decisions do not constitute ineffective assistance of counsel if alternative courses of action have been considered and rejected. *Whitfield v. State*, 923 So.2d 375 (Fla. 2005). Where evidence known to trial counsel undermines the validity of a voluntary intoxication defense, trial counsel is not ineffective for pursuing a reasonable alternative defense. *See Stewart v. State*, 801 So.2d 59, 65-66 (Fla. 2001) (rejecting a claim that trial counsel was ineffective for not pursuing a voluntary intoxication defense where trial counsel testified that in his experience, the defendant's

12

version of events were inconsistent with a voluntary intoxication defense). Here, trial counsel clearly considered alternative means of proceeding and in his professional judgment decided not to present a voluntary intoxication defense.

Given that gunshot residue was found on Tracy's hands after the shooting,[4] the similarity between the clothing Tracy was wearing at the time the shooting occurred and the clothing Petitioner was wearing when he was arrested, and Tracy's use of Petitioner's car the day of the offense, it cannot be said that trial counsel's decision to point to Tracy as the murderer fell outside the wide range of reasonable professional assistance. Under the circumstances, trial counsel was not constitutionally required to pursue an intoxication defense in lieu of, or even in addition to, his mistaken identity defense in order to be reasonably effective pursuant to the dictates of *Strickland*. *See, e.g., Jennings v. State*, 583 So. 2d 316, 320 (Fla. 1991) (defense counsel was not ineffective for strategically electing a defense based on identity instead of intoxication).

Acknowledging that there were five eyewitnesses to the murder, Petitioner contends that having the benefit of this information through discovery, trial counsel was on notice that the misidentification defense would not be successful. The record reveals, however, that two of the five witnesses could not identify Petitioner as the shooter, and one of the three witnesses who did identify Petitioner was, as the trial court pointed out in rejecting this claim, Tracy Moore, who trial counsel asserted actually fired the fatal shots.

Petitioner points to testimony by three of the State's witnesses that he contends supported a voluntary intoxication defense – Crime Scene Technician Supervisor ("CSTS") Tracy Grice, Andrea Stockton, and Tracy Moore. During the trial, CSTS Grice authenticated

---

[4]Law enforcement officers failed to test Petitioner's hands or his clothing for gunshot residue. According to witnesses, the shooter returned to his car and drove away within seconds after firing the gun; no gunshot residue was found inside Petitioner's car.

a photograph taken of the interior of Petitioner's car.  The photograph revealed that there was a bottle cap inside the car that, according to CSTS Grice, appeared to come from a  bottle of Busch beer.  The presence of a lone bottle cap inside Petitioner's car does nothing to advance Petitioner's argument that his state of intoxication at the time of the shooting prevented him from forming the intent to kill his wife (Dkt. 9, Ex. 13, Vol. II at Tr. 177).  The bottle cap could have been dropped inside Petitioner's car by anyone at any time prior to 6:00 a.m. on July 14, 1997, when Lakeland police officers located the car abandoned in the vicinity of Omohundro Street and Kathleen Road, *see* Dkt. 9, Ex. 13, Vol. I at R. 24.

Ms. Stockton, an intake specialist at 4-C Family Resources, is the second witness Petitioner's asserts gave testimony that supported a voluntary intoxication defense.  She testified that she met Petitioner for the first time in the late afternoon of July 13, 1997, at Fiesta Neal's house.  According to Ms. Stockton, Petitioner was outgoing and seemed to be a "cheerful" person. *Id.* at Tr. 573.  Petitioner was at the Neal house for approximately 10-15 minutes.  When Ms. Neal noticed that Petitioner was no longer in the house, she discovered that her car was also missing.  Ms. Stockton further testified that Petitioner returned to the Neal home after she and Ms. Neal had learned of the killing and Ms. Neal had left the house to search for her car.  According to Ms. Stockton, when he returned, Petitioner was carrying a "bag with a beer in it." *Id.* at Tr. 576.  Whether Petitioner was drinking beer during an encounter that occurred *after* the shooting is not relevant to Petitioner's state of intoxication at the time the crime was committed.

Finally, Petitioner contends that testimony by Tracy Moore supported the defense of voluntary intoxication.  Tracy testified that he and Petitioner were together most of the day.  According to Tracy, during that time, Petitioner had only two bottles of beer, one of which he did not finish drinking before the shooting occurred. *Id.,* Vol. V at Tr. 712.  Nothing in Tracy's

14

testimony indicates that Petitioner evidenced any signs of intoxication at the time the shooting occurred.

As the record reflects, there was strong evidence that directly contradicted a defense of voluntary intoxication. Shortly before the shooting occurred, Petitioner was observed at the Diamond D, a convenience store located approximately two blocks from the scene of the shooting (Dkt. 9, Ex. 13, Vol. II at Tr. 265). Assigned to patrol the area, Lakeland Police Officers Stacy Pough and Fred Lewis were sitting in the Diamond D parking lot in a marked patrol unit. *Id.* at Tr. 265, 289. Both officers had personally known Petitioner for several years, *see* Dkt. 9, Ex. 13, Vol. I at R. 23, and Officer Lewis testified that he and Petitioner were friends before this encounter occurred. *Id.* at Tr. 291. Carrying what appeared to be a bottle of beer, Petitioner approached the officers and spoke with them briefly. *Id.* at Tr. 266, 290-93. During the trial, Officer Lewis testified as follows:

> Prosecutor:   Going back to the parking lot at the Diamond D when you were talking to Chris Moore, what was – what was his demeanor?  How was he acting.
>
> Officer:   Normal.  I didn't see any –
>
> Prosecutor:   Previous to that occasion how many times if you remember have you had direct contact, conversation, with the defendant?
>
> Officer:   I can't recall.  It's been several – several times.
>
> Prosecutor:   Several times.  Okay.  Do you recall how long have you [sic] known Christopher Moore, the Defendant?
>
> Officer:   It's been a couple years or so I would say.

Dkt. 9, Ex. 13, Vol. II at Tr. 298. Apparently having no concern about Petitioner's sobriety, the officers watched as he entered his car and drove away. *Id.* at Tr. 268. Within eight to ten minutes of this encounter, two shots were fired at the victim as she sat in her car a little over two blocks from where the officers had last seen Petitioner. *Id.* at Tr. 269. The passenger in

15

Petitioner's car as he left the Diamond D, Tracy Moore, was at the scene of the shooting when law enforcement officers arrived. He identified Petitioner as the shooter.

Fiesta Kay Neal testified that Petitioner visited her home approximately six or seven times during the two months preceding the murder. According to Ms. Neal, she spoke with Petitioner during two visits he made to her house on the day the shooting occurred, once in the morning and once in the late afternoon. Although Ms. Neal could not recall the time Petitioner arrived at her home in the afternoon, based on testimony regarding the clothing he was wearing when observed at the scene of the killing at 4:45 p.m., Ms. Neal's description of the clothing he was wearing when he returned in the afternoon, and the description of the clothing Petitioner was wearing when he was arrested four hours after the shooting, the second visit occurred after the victim had been killed. When queried regarding Petitioner's behavior, Mrs. Neal testified that Petitioner as acting "[l]ike his normal self" during each visit. *See* Dkt. 9, Ex. 13, Vol. V at 544-45; 565.

In fact, with the exception of Mr. and Mrs. Williams, discussed *infra*, the witnesses who knew Petitioner prior to the day of the shooting and had contact with him that day described his demeanor as "normal." This testimony directly contradicts Petitioner's assertion that he was so intoxicated on alcohol and prescription drugs that he could not form the intent to commit murder.

The Court finds that Petitioner has failed to establish that trial counsel's decision to advance a misidentification defense was not unreasonable under prevailing professional norms. *See Strickland v. Washington*, 466 U.S. at 688.

In Ground Two, Petitioner alleges that trial counsel was ineffective for failing to investigate and present testimony by Ms. Joanne Olsbey,[5] a witness who, Petitioner contends, would have provided testimony based on "first hand knowledge of his mental state" that he was "disoriented" on the day the murder occurred. As Respondent correctly argues, and Petitioner concedes, he did not present this issue as an independent claim in his Rule 3.850 motion. To the contrary, in the memorandum of law Petitioner submitted in support of the motion, his only reference to Mrs. Olsbey was in his argument that trial counsel was ineffective for pursuing a mistaken identity defense rather than a voluntary intoxication defense, arguing that:

> Added to this exacerbation is the unsolicited testimony of Joanne Olsbey who had verifiable information that Petitioner was disorientated on the day of this crime, but counsel failed to interview or return Ms. Olsbey's calls. . . . Petitioner also asked counsel why he had not responded to Ms. Olsbey's calls and interviewed her as a defense witness since she was able to describe Petitioner's mental state on the date of the shooting. Counsel . . . indicated that Ms. Olsbey had nothing to contribute to the case.

Dkt. 9, Ex. 6, Vol. I at PCR 62.

The trial court, however, addressed this as an independent claim, albeit finding that it was insufficiently plead to warrant post-conviction relief:

> The Defendant argues that trial counsel was ineffective for failing to interview and/or call as a witness a "Ms. Olsbey." Defendant will not be entitled to relief on this claim as it fails under *Highsmith v. State*, 617 So.2d 825 (Fla. 1st DCA 1993).[6]

Dkt. 9, Ex. 6, Vol. II at PCR 349 (footnote added).

---

[5]As Respondent points out, throughout the post-conviction proceedings, this putative witness was referred to as Ms. "Olesby," "Oseby," "Oglesby," or "Hornsby," interchangeably (Dkt. 12 at 4).

[6]*Highsmith v. State*, 617 So.2d 825, 826 (Fla. 1st DCA 1993) ("A defendant alleging ineffective assistance of counsel must first allege a specific omission or overt act upon which his claim is based and such allegations must be in sufficient detail to apprise the court of the names of the witnesses, the substance of their testimony, and how the omission prejudiced the outcome of the trial.").

Accepting the trial court's finding that this ground was raised, albeit superficially, in Petitioner's memorandum of law, the claim was waived or abandoned by the failure of post-conviction appellate counsel to brief the issue on appeal. In Florida, as in other jurisdictions, the appellate rules and decisional law require that issues not presented and argued in an initial brief are deemed abandoned or waived, and will not be considered by the reviewing court. Fla. R. App. P. 9.210(b)(5) ("The initial brief shall contain . . . [a]rgument with regard to each issue"). *See, e.g. Duest v. Dugger*, 555 So. 2d 849, 851-52 (Fla. 1990) (merely making reference to arguments in the lower court without further elucidation does not suffice to preserve issues, and those claims are deemed to have been waived); *Bondu v. Gurvich*, 473 So. 2d 1307, 1313 n.1 (Fla. 3d DCA 1984) (despite fact that the notice of appeal stated that appellant was appealing certain additional actions of the trial court, the failure to challenge these actions in the initial brief results in abandonment of those challenges); *St. John's River Terminal Co., Inc. v. Vaden*, 190 So.2d 40, 41 (Fla. 1st DCA 1966) (assignments of error not argued in appellant's brief are considered abandoned). The law in this circuit is in accord with this principle. *See Atkins v. Singletary*, 965 F.2d 952, 955 n.1 (11th Cir. 1992) (determining appellants have abandoned claims not addressed on appeal); *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (finding an issue abandoned where the party did not make any arguments as to that issue on the merits in its initial or reply brief).

Even if the claim were not abandoned on appeal, Petitioner would not be entitled to the relief he seeks. First, although Petitioner does not provide any information in his petition regarding when, in relation to the shooting, he last had contact with Olsbey, he testified as follows on direct examination during the Rule 3.850 evidentiary hearing:

18

A: Well, I told [Ms. Taylor] that I had been drinking all that morning and that afternoon, which I had told her. And then I told her all that afternoon I was drinking, and I told her that I had saw Ms. Oglesby, Joanne Oglesby, and she could vouch for me that I was very intoxicated that day. And she said, "Is this – are you sure this is what happened?" I said "That's all I remember because everything else I didn't remember." You know, that's the only thing I could tell her, you know, at the time. And she said, "Okay." And that's all. I wrote it on a pad for her and everything. And that was the last I heard of that type of –

Q: Okay. Tell the Court who Joanne is.

A: Joanne Oglesby was a girl that I knew on the street.

Q: Okay. Was she a friend of yours?

A: Yes. She's a friend of mine.

Q: And you hadn't – had you seen her –

A: Yes.

Q: – the day that your wife was shot?

A: Yes, that evening.

Q: Okay. And you told Mr. Edmund's assistant that this woman, Joanne, would be able to tell him that you were intoxicated that night?

A: Yes, sir.

Dkt. 9, Ex. 6, Vol. I at 119-20. The victim was shot at approximately 4:45 p.m., and Petitioner was taken into custody approximately four hours after the shooting occurred. He acknowledges that he did not see Ms. Olsbey until "that evening." Assuming that Ms. Olsbey would have testified as Petitioner asserts, his state of intoxication following the shooting is not at issue. *See Rivera v. State*, 717 So.2d 477, 485 n. 12 (Fla. 1998). Trial counsel is not ineffective for failing to call a witness whose testimony is not relevant to the defense.

In Ground Three, Petitioner contends that trial counsel was ineffective in excluding him from participating in the development of a defense strategy "where [trial] counsel never once

met with, interviewed, or in any way discussed Petitioner's case with him during [trial] counsel's year-long representation of Petitioner." This claim is likewise without merit.

As post-conviction counsel noted, trial counsel was recognized as "one of the most capable criminal lawyer[s] in Florida" (Dkt. 9, Ex. 7 at 4 n.5 (quoting *Davis v. State*, 277 So.2d 300, 302 (Fla. 2d DCA 1973)). During the Rule 3.850 evidentiary hearing, trial counsel testified that based on his experience and observations of other successful defense attorneys, he had adopted a policy of never meeting the client until the day of the trial, relying instead on a "trusted" employee to assist him by conducting client interviews during trial preparation (Dkt. 9, Ex. 6, Vol. I at PCR 155).

The absence of attorney-client conferences does not in itself demonstrate deficient performance or prejudice. It is well-settled that in evaluating an ineffective assistance of counsel claim, it is not the time spent with the petitioner that is determinative, but the sufficiency or adequacy of trial counsel's preparation time. Petitioner's claim that his attorney was ineffective because he relied on information gleaned from interviews of Petitioner conducted by a trusted member of his staff does not warrant habeas corpus relief. "The brevity of time spent in consultation with counsel is only a factor to be considered in the totality of the circumstances." *See Jones v. Henderson*, 549 F. 2d 995, 997 (5th Cir. 1977); *Doughty v. Beto*, 396 F.2d 128, 130 (5th Cir. 1968).

Nothing in the record supports the contention that trial counsel's performance was unreasonable under prevailing professional norms or that Petitioner was prejudiced by trial counsel's decision to rely on his support staff to conduct pretrial interviews. What the record does demonstrate is that trial counsel insured that witnesses were interviewed and deposed, filed appropriate pretrial motions, and advocated zealously for his client during the trial. As the trial court found in denying Petitioner's claim, based on the record and testimony by

20

Petitioner, the prosecutor, and Mr. Edmund during the Rule 3.850 evidentiary hearing, trial counsel's decision not to assert the intoxication defense, as well as his attempt to at least raise some reasonable doubt by pointing to evidence that Tracy Moore may have been the one who shot Petitioner's wife rather than Petitioner, was a viable trial strategy based on the facts of this case.  Petitioner has not rebutted the presumption of correctness accorded the trial court's factual finding on this issue.

Petitioner has failed to establish that the trial court's rejection of his ineffective assistance of counsel claims is contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that is based on an unreasonable determination of the facts in light of the evidence presented.  Grounds One, Two, and Three will, therefore, be denied.

**Ground Four**

In his fourth claim, Petitioner asserts that his right to due process was violated by the admission of highly prejudicial photographs of the victim's wounds, character testimony which had previously been ruled inadmissible by the trial court, and hearsay references to his character. Petitioner contends that these alleged errors undermined the fundamental fairness of his trial.  As discussed below, each of these subclaims lacks merit.

**Prejudicial Photographs**

First, Petitioner argues that he was denied a fair trial by the admission of "highly prejudicial and inflammatory photographs which had absolutely no probative or evidentiary value in Petitioner's trial." The photographs at issue were taken at the crime scene the day of the killing and during the autopsy of the victim.  Following a proffer by Dr. Stephen J. Nelson, Chief Medical Examiner for the Tenth Judicial Circuit, the photographs were admitted over trial counsel's objection.

21

Respondent argues that because the issue regarding the admission of the photographs should have been, but was not, raised on direct appeal, the claim is procedurally barred. In order for a court to consider claims brought in a federal habeas petition they must first be fully exhausted in state court. 28 U.S.C. § 2254(b)(1). The exhaustion requirement is not designed to frustrate relief in the federal courts, but rather to give the state court an opportunity to correct any errors which may have crept into the state criminal process. In this circuit, "when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we . . . treat those claims now barred by state law as [providing] no basis for federal habeas relief." *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998).

A petitioner's claims or portions of claims which are not exhausted but would clearly be barred if returned to state court must be dismissed. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)*; Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). Here it would be futile to dismiss this case to give Petitioner the opportunity to exhaust this claim because it could have and should have been raised on direct appeal. *See* Fla. R. Crim.P. 3.850(c).[2] Because Petitioner did not present his constitutional claim to the highest state court, it has not been exhausted and is now procedurally barred in state court.

The issue of exhaustion is a statutory requirement which the State did not expressly waive in this case. *See* 28 U.S.C. 2254(b)(3). *See McNair v. Campbell,* 416 F.3d 1291, 1302-04 (11th Cir. 2005). Petitioner does not assert that there is an "absence of available state corrective process" or that "circumstances exist that render such process ineffective to protect [his] rights." 28 U.S.C. §2254(b)(1)(B). Petitioner instead concedes that the claim is

---

[2]Under Fla. R. Crim. P. 3.850(c), "grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal" are procedurally barred from collateral review.

procedurally barred from review in the state court because it was not raised on direct appeal (Dkt. 17 at 16), but urges the Court to consider the merits of the claim because the "error resulted in a loss of fundamental fairness in [his] trial" (Dkt. 17 at 16).

Petitioner cites the pre-AEDPA decision in *Lloyd v. Walker*, 771 F.Supp. 570 (E.D. N.Y. 1991), in support of his request that the Court disregard the procedural bar to his claim. Petitioner's reliance on the *Lloyd* decision is misplaced. In *Lloyd*, the district court addressed claims that were not presented on direct appeal, but were later raised in an application for post-conviction relief and addressed on the merits, noting that "[s]tate procedural bars are not immortal . . . . ; they may expire because of later actions by state courts. If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal court review that might otherwise have been available." *Lloyd v. Walker*, 771 F.Supp. at 574 (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991)). In the present case, Petitioner likewise forfeited his claim in state court when he failed to present it on direct appeal. Unlike Lloyd, however, Petitioner did not seek, much less secure, a review of the merits of his claim in his post-conviction proceedings.

In recognition of "the important interest in finality served by state procedural rules, and the significant harm to the states that results from the failure of federal courts to respect them," federal habeas courts will only entertain a claim that is procedurally barred in state court if the petitioner demonstrates cause for the default and prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. at 750. Otherwise, the claim is procedurally defaulted in this Court. *Id.* at 735 n.1 (if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal

23

habeas purposes). Cause must ordinarily be something external to the petitioner -- something that cannot fairly be attributed to him. *Marek v. Singletary,* 62 F.3d 1295, 1302 (11th Cir.1995). To satisfy the prejudice requirement, Petitioner must show "actual" prejudice as a result of the alleged violation of federal law. *United States v. Frady,* 456 U.S. 152 (1982).

Petitioner asserts ineffective assistance of appellate counsel as cause for his default (Dkt. 17 at 17). A defendant can establish cause in some circumstances by showing that a procedural default was caused by constitutionally ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 690 (1984). *See Fortenberry v. Haley,* 297 F.3d 1213, 1222 (11th Cir. 2002). However, while ineffective assistance of counsel may satisfy the cause requirement, *see Murray v. Carrier*, 477 U.S. 478, 485 (1986), an ineffective assistance of counsel claim asserted as cause for another procedurally defaulted federal claim can, as in the instant case, itself be procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).

Unless the petitioner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim. *Id.* Relying on *Lloyd*, 771 F.Supp. at 574, Petitioner asserts he should be allowed to proceed on this claim because if presented to the state court now, his ineffective assistance of appellate counsel claim would be barred under Florida law by the statute of limitation applicable to requests for collateral relief. *See* Fla. R. Crim. P. 3.850(b). It is well settled that perceived futility of a claim does not constitute cause for a procedural default. See, *e.g., Smith v. Murray,* 477 U.S. 527, 535-36 (1986). Since Petitioner failed to exhaust his ineffective assistance of appellate claim, it cannot serve as cause to excuse the procedural default of his claim that the trial court erred in admitting photographs

24

of the victim into evidence.

Petitioner offers no other excuse for his failure to raise this claim on direct appeal, and the Court discerns none that would amount to good cause to overcome his procedural default. Having failed to allege, much less show, that any factors external to the defense prevented the presentation of this claim on appeal, Petitioner has not shown cause to excuse the default. *See Murray v. Carrier,* 477 U.S. 478 (1986).

An exception to the "cause-and-prejudice" requirement was recognized in *Wainwright v. Sykes*, 433 U.S. 72 (1977), when the Court stated that the standard developed there would not bar habeas relief for a victim of a "miscarriage of justice," often referred to as the "actual innocence" exception. *Id*. at 90. A petitioner in a collateral proceeding who wishes to establish his actual innocence to avoid a procedural bar to consideration of the merits of his underlying claim must demonstrate that "a *constitutional* violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo,* 513 U.S. 298, 327 (1995) (emphasis added). This gateway applies only if the petitioner can demonstrate that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House v. Bell,* __ U.S. __, 126 S.Ct. 2064, 2076-77 (2006); *see also Bousley v. United States,* 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. at 327-28). In this context, Petitioner must show constitutional error coupled with newly discovered evidence that was not presented at trial that would establish factual innocence rather than mere legal insufficiency. *Id*; *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). *See also Schlup v. Delo*, 513 U.S. at 324. Petitioner has not come forward with any "new" evidence of innocence, and he does not deny having committed the murder. The Court concludes that Petitioner has not presented a colorable claim of actual innocence.

Applying § 2254(b), Petitioner is procedurally barred from raising this claim. Consequently, the claim will not be reviewed on the merits.

## Motion for a Mistrial

Petitioner argues that the trial court erred in denying trial counsel's motion for a mistrial on grounds that testimony by Mrs. Sammie Williams tainted the jury.  Mrs. Williams, wife of one of Petitioner's co-workers, testified about the encounter she and her husband had with Petitioner after the shooting occurred:

Q: Did you or your husband in your presence if known ask him what was that all about?

A: Yes, my husband asked him what was wrong, what was the matter.

Q: What did he say?

A: He just said he was fixing to go to jail.

Q: What was his demeanor?

A: Nervous I guess.

Q: You have seen him before and you know how he acts?

A: Yes.

Q: Was he acting himself or was he different than his normal – if you know ma'am?

A: Well, I guess, because, you know, he asked us, you know, told us that he loved us and stuff and everything.  And he told my husband that *he was fixing to go <u>back to jail</u>* and asked him to, you know, take care of his mom and tell his mom that he was okay.

Dkt. 9, Ex. 13, Vol. IV at 591-92 (emphasis added). The record reflects that the jury was then taken from the courtroom, and the trial court heard argument on trial counsel's objection to Mrs. Williams's testimony and a motion for a mistrial. The trial court sustained trial counsel's objection, but reserved ruling on the motion for a mistrial until the jury returned with its verdict – a decision to which trial counsel acquiesced (Dkt. 9, Ex. 13, Vol. IV at Tr. 593-600). When the jury was brought back into the courtroom, the trial court judge instructed the jurors to disregard the last response given by Mrs. Williams. *Id.* at Tr. 603. Following the jury's guilty verdict, trial counsel moved for a new trial on the ground that the trial court erred in failing to grant the motion for a mistrial following Mrs. Williams's testimony. *Id.*, Vol. I at R. 36. The motion was denied. *Id.* at R. 54.

Petitioner argues that he was prejudiced by Mrs. Williams's testimony because he did not want the jury to view him as a criminal or "develop a preconceived idea as to his criminality" (Dkt. 17 at 19). Petitioner's assertion that the trial court erred in denying the motion for a mistrial was properly exhausted when it was raised and rejected on direct appeal[3] (Dkt. 9, Ex. 1 at R. 25; 29-30). *See Moore v. State*, 747 So.2d 940 (Fla. 2d DCA

---

[3]Petitioner also raised this issue in support of his ineffective assistance of counsel claim in his Rule 3.850 motion, asserting that trial counsel was ineffective for failing to "timely object" to Mrs. Williams's testimony. In rejecting this claim in the Rule 3.850 proceedings, the trial court found:

> Defendant alleges that the testimony of Sammie Williams violated the Motion in Limine. The defendant claims that counsel was ineffective for failing to object to the witnesses [sic] testimony. This is incorrect, trial counsel objected and moved for a mistrial. (See attached). Further, the Defendant should have argued this issue on direct appeal.

Dkt. 9, Ex. 6, Vol. II at 349. While its rejection of Petitioner's ineffective assistance of counsel claim based on the finding that trial counsel did object to Mrs. Williams's testimony regarding Petitioner's statement and move for a mistrial is supported by the record, the trial court's statement that this issue should have been argued on direct appeal is a misstatement of Florida law. Under Florida law, substantive claims of trial court error are properly presented on direct appeal, but ineffective assistance of counsel claims are properly presented in a Rule 3.850 motion. *See Johnston v. State*, 841 So.2d 349, 356-57 n.9 (Fla. 2002) (quoting *Bruno v. State*, 807 So.2d 55, 63 (Fla. 2001) ("Whereas the main question on direct appeal is whether the trial court erred, the main question in a *Strickland* claim is whether trial counsel was ineffective. Both claims may arise from the same underlying facts, but the claims themselves are distinct and – of necessity – have different remedies: A claim of trial court error generally can be raised on direct appeal but not in a [R]ule 3.850 motion, and a claim of

1999) (table decision).

Although the state appellate court affirmed Petitioner's conviction without written opinion, the Eleventh Circuit has held that all that is required to warrant deference under § 2254 is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for its ruling. The decision is, therefore, entitled to the same deference as if the appellate court had entered written findings to support it. *See Wright v. Sec. of Dep't of Corrs.*, 278 F.3d 1245 (11th Cir. 2002), *cert. denied*, 538 U.S. 906 (2003).

Respondent contends that this issue is not cognizable in a federal habeas proceeding because it involves a matter of state law only. It is well-settled that federal habeas corpus relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Pulley v. Harris*, 465 U.S. 37 (1984); *Wainwright v. Goode*, 464 U.S. 78 (1983). Simple trial court error as to the admission of evidence is a matter of state law and, therefore, generally not cognizable in a § 2254 proceeding. Even when a petition that actually involves state law issues is "couched in terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1196-98 (5th Cir. 1976)). Absent a constitutional violation, which as discussed below did not befall Petitioner, the Florida courts are the final arbiter of Florida law. *See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *Mills v. Singletary,* 161 F.3d 1273, 1289 (11th Cir.1998), *cert. denied*, 528 U.S. 1082 (2000); *Hunt v. Tucker*, 93 F.3d 735, 737 (11th Cir. 1996) (per curiam); *Baxter v. Thomas,* 45 F.3d 1501, 1509 (11th Cir.), *cert. denied,* 516 U.S. 946 (1995).

--------

ineffectiveness generally can be raised in a [R]ule 3.850 motion but not on direct appeal." (footnotes omitted)). The trial court's misstatement of Florida law in rejecting Petitioner's ineffective assistance of counsel claim is of no consequence to the outcome on the underlying substantive claim of trial court error presented in these proceedings.

As to Petitioner's argument that the denial of the motion for a mistrial violated "his right to a fundamentally fair trial," *see* Dkt. 1 at 9, this assertion is likewise without merit.  Bound by the state court's construction of its evidentiary law, *Mullaney v. Wilbur*, 421 U.S. at 691, it is only where the admission of certain evidence is so prejudicial as to constitute a denial of fundamental fairness that a federal court will intervene. *Hall v. Wainwright*, 733 F.2d 766, 770 (11th Cir. 1984).  "As a guideline for applying the criterion of fundamental fairness, the erroneous admission of prejudicial evidence can justify habeas corpus relief only if it is 'material in the sense of a crucial, highly significant factor.'" *Dickson v. Wainwright*, 683 F.2d 348, 350 (11th Cir. 1982) (citations omitted). In *Estelle v. McGuire,* the Supreme Court narrowly defined the category of infractions that violate fundamental fairness. 502 U.S. 62, 72 (1991).  For the most part, evidentiary rulings simply do not raise questions of a constitutional magnitude. *McCullough v. Singletary*, 967 F.2d 530, 535-36 (11ᵗʰ Cir. 1992). *See also Marshall v. Lonberger*, 459 U.S. 422, 438, n.6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules").

The Court concludes that in the present case, Mrs. Williams's isolated statement that Petitioner said he "was fixing to go <u>back</u> to jail" was not "material" to the outcome of Petitioner's trial. As discussed below, the other evidence of guilt presented at trial was substantial to a degree that would negate any possibility of actual prejudice resulting to Petitioner from the statement.[4]

---

[4]The Court also finds Petitioner's argument that this claim is analogous to forcing a defendant to appear for trial in jail clothing unpersuasive.  *See Estelle v. Williams*, 425 U.S. 501, 504-06 (1976) (holding that a defendant's presumption of innocence is undermined and his right to a fair trial violated when the state compels him to stand trial in prison or jail clothing); *see also United States v. Harris,* 703 F.2d 508, 509-11 (11th Cir. 1983) (holding a defendant's due process rights were violated where he was compelled to wear prison clothing during jury voir dire). As the Eleventh Circuit explained in *United States v. Villabona-Garnica*, "the Supreme Court emphasized that the prison clothing was a 'constant reminder of the accused's condition,' 'a continuing

As discussed above, the State adduced testimony from five witnesses to the shooting, three of whom identified Petitioner as the shooter. Tracy Moore, Petitioner's second cousin, testified that on the morning of July 13, 1997, Petitioner appeared at his apartment in Bartow.[5] Petitioner and Tracy spent most of the morning together "riding around" in Petitioner's car (Dkt. 9, Ex. 13, Vol. V at Tr. 708-22). At approximately 1:30 p.m., Petitioner left his car with Tracy and rode away with a friend known to Tracy as "Sharif." *Id.* at Tr. 713.

Tracy further testified that approximately two hours later, he and Petitioner met again in the parking lot of a convenience store. *Id.* at Tr. 715. When the two men left the store, Petitioner was driving and Tracy was sitting in the passenger seat. According to Tracy, when Petitioner saw the victim, he abruptly changed directions and began to follow her, accelerating in an attempt to overtake her car. *Id.* at Tr. 722. Tracy further testified that Petitioner positioned his car in front of the victim's car, blocking the roadway. When the victim attempted to back up her car, Petitioner began ramming into it, causing the two cars to become jammed together. *Id.* at Tr. 723.

Tracy testified that he was in Petitioner's car when it collided with the victim's car. *Id.* at Tr. 723. According to Tracy, once the victim's car was disabled, Petitioner jumped out of his car. It was then that Tracy first learned that Petitioner had a gun. When he saw the gun in Petitioner's hand, Tracy asked him what he was doing. Petitioner replied "I got to kill her. I got to kill her." *Id.* When Tracy attempted to stop Petitioner from approaching the victim, a

---

influence throughout the trial' that presented an 'unacceptable risk' of 'impermissible factors coming into play' and corrupting a juror's judgment." 63 F.3d 1051, 1058 (11th Cir. 1995) (quoting *Estelle v. Williams,* 425 U.S. at 504-05). Under the circumstances presented in the instant case, there was no "constant reminder" of Petitioner's criminal history.

[5]In reviewing the trial transcript, the Court discovered that Respondent's recount of Tracy Moore's testimony is not supported by the record. The Court has, therefore, relied on the trial transcript in summarizing Tracy's testimony. The discrepancies between Respondent's recitation of Tracy's testimony and the trial transcript are not determinative to the outcome of these proceedings.

struggle ensued. *Id*. In the interim, the victim managed to call 911 on her cell phone. *Id.*, Vol. IV at Tr. 478-80. According to Tracy, the struggle continued until Petitioner attempted to fire the gun into Tracy's chest. The weapon misfired three times before Tracy was able to break away from Petitioner. Petitioner then struck Tracy in the head with the butt of the gun. Stunned by the blow, Tracy ran toward a nearby house. *Id.*, Vol. V at Tr. 725.

Tracy further testified that he watched Petitioner approach the victim with the gun in his hand and saw Petitioner pull the trigger, firing through the driver's side window of the victim's car. *Id*. This testimony was corroborated by four other witnesses to the shooting, two of whom also identified Petitioner as the shooter (Dkt. 9, Ex. 13, Vol. III at Tr. 343, 383-84). Given the overwhelming evidence of Petitioner's guilt, the Court concludes that the trial court's denial of the motion for a mistrial did not rise to the level of a denial of fundamental fairness.

Moreover, as Respondent points out, the trial court cured any possibility of prejudice as a result of Ms. Williams's testimony when it instructed the jury to disregard her last response. "A jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). *See also Ingram v. Zant*, 26 F.3d 1047, 1053 (11th Cir. 1994); *United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir. 1992) ("A curative instruction purges the taint of a prejudicial remark because a jury is presumed to follow jury instructions." (quotation marks omitted)); *Snipes v. State*, 733 So.2d 1000, 1005 (Fla. 1999) ("[W]hen a brief reference is made to a defendant's previous incarceration, defense counsel should request a curative instruction because any prejudice arising from the admission of such testimony usually can be corrected by an instruction to the jury to disregard the testimony." (citation omitted)); *Johnston v. State*, 497 So.2d 863, 869 (Fla. 1986) (finding that any alleged prejudice which

may have resulted from a reference to the defendant's prior incarceration was fully alleviated by a curative instruction, the court concluded that the trial court did not abuse its discretion in denying defense counsel's motion for a mistrial). Thus, absent evidence to the contrary, this Court must presume that the jury did not consider Mrs. Williams's testimony regarding Petitioner's statement that he was "going back to jail" in reaching its verdict.

Petitioner has failed to demonstrate that the state court's adjudication of this claim is contrary to clearly established federal law, involves an unreasonable application of clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

### Prosecutor's Comments

As to the assertion that the trial court allowed the use of improper character evidence, from what the Court can discern, Petitioner is arguing that the prosecutor's "attacks" on his character "so undermined the judicial process in this trial as to render it fundamentally unfair in violation of Petitioner's due process rights" (Dkt. 2 at 20). Petitioner fails, however, to direct the Court's attention to anything in the record which supports this claim. It is well-established that to secure a hearing on his claims, a habeas petitioner must allege facts, which, if true, would entitle him to habeas relief. *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (en banc). The law does not require a federal habeas court to hear a claim based entirely on conclusory allegations wholly devoid of specifics. *See Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994) (en banc). The Court cannot conjure up facts to support Petitioner's claim, nor is it the Court's role to serve as an investigator for Petitioner. This claim is, therefore, denied.

## Conclusion

For the foregoing reasons, the Court finds that Petitioner has failed to establish that he is entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1. The Petition for Writ of Habeas Corpus is **DENIED**.  Dkt. 1.

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**ORDERED** in Tampa, Florida, on *September* 20th , 2006.

JAMES D. WHITTEMORE
United States District Judge

SA:jsh
Copy to: All Parties of Record

33